**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN ROBINSON, et al., | Case No. 2:19-cv-5651 |
| Plaintiffs, | |
| | Judge James L. Graham |
| v. | |
| | Magistrate Judge Chelsey M. Vascura |
| CITY OF COLUMBUS, et al., | |
| Defendants. | **DEFENDANTS' ANSWER** |

For their answer to the complaint filed by Plaintiffs Jonathan Robinson, Derryle Sloan, and Derrick Sloan, filed December 30, 2019, Defendants City of Columbus, Carl Harmon, Anthony Johnson, David Schultz, Joseph Barsotti, Alex Mottinger, and Bret Woodyard hereby admit, deny, and aver the following:

**SPECIFIC ADMISSIONS, DENIALS & ASSERTIONS**

1.      In response to Paragraph 1 of Plaintiffs' complaint, Defendants make the following statements:

   a.      The claims at issue in this civil action arise out of an incident occurring on June 7, 2019;

   b.      During that incident, police officers with the Columbus Division of Police (also known as the Columbus Police Department or "CPD") arrested Jonathan; arrested Derrick; searched a residence at 773 Stanley Avenue in Columbus, Ohio, without a warrant; and seized a BB gun from that residence[1];

---

[1] Because two of the plaintiffs have same surname (i.e., Sloan), Defendants will use their first names to distinguish them. Because Plaintiff Jonathan Robinson shares a surname with a non-party who will nonetheless be referenced at length during this civil action (i.e., Jahanara Robinson), Defendants will use their first names to distinguish them. No disrespect is intended.

      c.      Because Defendants are without knowledge, information, or believe sufficient to admit or deny that the seized BB gun was Derryle's property, Defendants deny any such allegation or suggesting in Paragraph 1 of Plaintiffs' complaint; and

      d.      No CPD officer violated any of Plaintiffs' rights under either state or federal law during the incident.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

2.      In response to Paragraph 2 of Plaintiffs' complaint, Defendants make the following statements:

      a.      Plaintiffs are seeking the relief listed;

      b.      Plaintiffs are not entitled to the relief listed; and

      c.      Plaintiffs are not entitled to any relief as a result of the relevant incident; and

      d.      Plaintiffs are not entitled to any relief as a result of criminal charges that were filed against them as a result of the relevant incident.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

3.      Defendants admit the allegations in Paragraph 3 of Plaintiffs' complaint.

4.      In response to Paragraph 4 of Plaintiffs' complaint, Defendants make the following statements:

      a.      This Court has original jurisdiction over the subject matter of this dispute per 28 U.S.C. § 1343(a)(4); and

b.      This Court does not have original jurisdiction over the subject matter of this dispute per 28 U.S.C. § 1343(a)(3).

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

5.      Defendants deny the allegations in Paragraph 5 of Plaintiffs' complaint

6.      Defendants admit the allegations in Paragraph 6 of Plaintiffs' complaint.

7.      Defendants admit the allegations in Paragraph 7 of Plaintiffs' complaint.

8.      In response to Paragraph 8 of Plaintiffs' complaint, Defendants make the following statements:

a.      Jonathan is an adult male person; and

b.      Because Defendants are without knowledge, information, or believe sufficient to admit or deny that Jonathan was a resident of the City of Columbus, the County of Franklin, or the State of Ohio, at all times relevant to this civil action, Defendants deny those allegations.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

9.      Defendants admit the allegations in Paragraph 9 of Plaintiffs' complaint.

10.     Defendants admit the allegations in Paragraph 10 of Plaintiffs' complaint.

11.     Defendants admit the allegations in Paragraph 11 of Plaintiffs' complaint.

12.     Defendants admit the allegations in Paragraph 12 of Plaintiffs' complaint.

13.     Defendants admit the allegations in Paragraph 13 of Plaintiffs' complaint.

14.     Defendants admit the allegations in Paragraph 14 of Plaintiffs' complaint.

15.     Defendants admit the allegations in Paragraph 15 of Plaintiffs' complaint.

16.     Defendants admit the allegations in Paragraph 16 of Plaintiffs' complaint.

17.     Defendants admit the allegations in Paragraph 17 of Plaintiffs' complaint.

18.     In response to Paragraph 18 of Plaintiffs' complaint, Defendants make the following statements:

a.     The CPD's ShotSpotter gunfire detection system reported that a single round had been fired at or near 39.944478 latitude and -82.976278 longitude at 6:03:55 p.m. on June 7, 2019;

b.     Officer Schultz responded to the report alone;

c.     When Officer Schultz arrived in the area, he spoke to an individual who was painting a house, and that individual directed him the residence at 773 Stanley Avenue;

d.     The ShotSpotter coordinates pointed to an unnamed alley running north and south along the west side of the residence at 773 Stanley Avenue;

e.     Officer Schultz parked CPD Cruiser 110 in the alley next to the residence, and began to search for spent shell casings, bullet holes, or other signs of a discharged firearm;

f.     When Officer Schultz reached the rear of the residence (its south face), he observed that the back door to the residence was standing wide open;

g.     As Officer Schultz approached the wide open door in the rear of the residence, someone inside abruptly slammed it, and Officer Schultz heard the sound of several persons running inside;

h.     Officer Schultz called CPD Dispatch for assistance, and a 10-3 (officer-in-trouble) code was aired over the radio;

        i.        More than ten CPD officers responded to the residence at 773 Stanley Avenue in light of the 10-3 code;

        j.        Officers Harmon, Johnson, Woodyard, Barsotti, and Mottinger were among the CPD officers who responded to the residence; and

        k.        No more than one CPD officer (i.e., Officer Schultz) responded to the original ShotSpotter report.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

19.        In response to Paragraph 19 of Plaintiffs' complaint, Defendants make the following statements:

        a.        When Officer Schultz was initially searching the unnamed alley to the west of 773 Stanley Avenue, Derryle, Derrick, and several children were present within the residence;

        b.        When Officer Schultz was initially searching the unnamed alley to the west of 773 Stanley Avenue, Derryle, Derrick, and the children were not the only individuals present within the residence;

        c.        Because Defendants are without knowledge, information, or believe sufficient to admit or deny that any of the children present within the residence at the time were Derryle's children, Defendants deny those allegations;

        d.        Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding what Derryle told the children or the children told Derryle, Defendants deny those allegations;

e.      Because Defendants are without knowledge, information, or believe sufficient to admit or deny the allegations that Derryle closed the back door of the residence or that he closed it to secure the children, Defendants deny those allegations;

f.      Officer Schultz was the first CPD officer to arrive at 773 Stanley Avenue, and he arrived alone;

g.      Officer Schultz was the first CPD officer to make contact with Derryle during the incident, and Officer Schultz made that first contact alone;

h.      Officer Schultz's service weapon was drawn when he made first contact with Derryle;

i.      Officer Mottinger arrived after Officer Schultz had made first contact with Derryle;

j.      Officer Woodyard arrived after Officer Schultz had made first contact with Derryle and after the subsequent melee instigated by Jonathan had begun;

k.      All of the adults present within the residence at the time came outside fairly early during the incident;

l.      The children remained inside the residence until well after the subsequent melee instigated by Jonathan was over;

m.      During the course of the incident, several CPD officers informed Derryle that the ShotSpotter had reported gunfire at that location; and

n.      Because Defendants are without knowledge, information, or believe sufficient to admit or deny the allegation that a CPD officer asked Derryle if he had any guns in within the residence, Defendants deny those allegations.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

20.     In response to Paragraph 20 of Plaintiffs' complaint, Defendants make the following statements:

        a.      Derryle repeatedly told the officers on scene that there was a BB gun in the residence;

        b.      A yet-to-be-identified adult male who had been present in the residence had even started to bring the BB gun out of the house but was ordered not to by officers;

        c.      Derryle gave officers permission to enter the residence;

        d.      Derrick and the yet-to-be-identified adult male told Officer Daniel Snyder that the BB gun was just inside the front door;

        e.      Officer Snyder opened the front door and retrieved the BB from just inside;

        f.      The BB gun was not a toy, and Derryle never indicated that it was;

        g.      Later, a very short time after subsequent melee instigated by Jonathan was over, Officer James Ridley entered the residence while the children were present and, with his service weapon drawn, searched the downstairs of the residence;

        h.      At about the same time that Officer Ridley searched the residence's downstairs, Officer Mottinger entered the home, did not conduct any sort of search, but rather spoke with the children and with Derryle;

        i.      Much later, after the children had been cleared from the residence, Officer Snyder and Officer Mottinger searched second floor while Officer Collins Jones waited at the foot of the stairs;

j.      After Officer Snyder and Officer Mottinger finished searching the second floor, Officer Jones joined them for a similar search of the kitchen, which was the last room on the first floor;

k.      None of the CPD officers who searched the residence had a warrant to do so; and

l.      Neither Officer Schultz nor Officer Woodyard ever went inside the residence. Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

21.     In response to Paragraph 21 of Plaintiffs' complaint, Defendants make the following statements:

a.      No CPD officer questioned the children about the presence of guns in the residence;

b.      At least one CPD officer had his service weapon drawn while in the house with the children;

c.      Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding the children's states of mind, mental impressions, or thought processes, Defendants deny such allegations;

d.      No firearms or other contraband were found inside the residence; and

e.      During his search of the residence, Officer Mottinger located and identified a high-capacity magazine on a shelf in the closet of an upstairs bedroom.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

22. Defendants admit the allegations in Paragraph 22 of Plaintiffs' complaint.

23. In response to Paragraph 23 of Plaintiffs' complaint, Defendants make the following statements:

a. As the situation at 773 Stanley Avenue developed, Jonathan arrived without Jahanara and was standing with a group of bystanders on the opposite side of Stanley Avenue;

b. Jahanara arrived later and was carrying two small children in her arms when she did;

c. Jahanara neither asked for nor received permission from any police officer to retrieve the children who were within the residence at 773 Stanley Avenue at the time;

d. Jahanara neither asked for nor received permission from any police officer to approach the residence at 773 Stanley Avenue at the time;

e. It was clear to any reasonable observer that the CPD officers on scene were keeping civilians away from the residence at 773 Stanley Avenue;

f. Within speaking to anyone, Jahanara passed through the group of bystanders that had congregated on the opposition side of Stanley Avenue and began to walk across the road toward the residence;

g. Officer Carl Harmon had been one of the CPD officers keeping bystanders away when Jahanara being walking toward the residence;

h. Officer Harmon intercepted Jahanara in the roadway, repeatedly said "Hey," extended his left arm toward her, and motioned for her to go back across the street; and

- 9 -

       i.      Jahanara immediately complied with Officer Harmon's orders and headed back toward the far side of Stanley Avenue to join the rest of the bystanders.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

24.     In response to Paragraph 24 of Plaintiffs' complaint, Defendants make the following statements:

      a.      While Officer Harmon was ordering Jahanara away, and while Jahanara was complying with Officer Harmon's orders, Jonathan ran directly at Officer Harmon with his fists clenched and screaming, "Don't you get near my fucking wife, motherfucker!"

      b.      In response to Jonathan's aggression, Officer Harmon extended his left arm toward Jonathan and issued the first of what would be four loud, clear, and verbal commands for Jonathan to "Get back!"

      c.      Jonathan ignored this first command from Officer Harmon, refused to get back, and instead screamed "Or what?!" at Officer Harmon;

      d.      In response to Jonathan's refusal to obey his first order, Officer Harmon issued a second loud, clear, and verbal command for Jonathan to "Get back!"

      e.      Jonathan ignored this second command from Officer Harmon, again refused to get back, and again screamed "Or what?!" at Officer Harmon;

      f.      In response to Jonathan's refusal to obey his first and second orders, Officer Harmon issued a third loud, clear, and verbal command for Jonathan to "Get back!"

      g.      Jonathan ignored this third command from Officer Harmon, yet again refused to get back, and yet again screamed "Or what?!" at Officer Harmon;

      h.     Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding the Jonathan's state of mind, mental impressions, or thought process, Defendants deny such allegations; and

      i.     Despite the foregoing, Defendants can in good faith deny that Jonathan was genuinely asking Officer Harmon to explain the consequences of his failure comply with a lawful order or direction from a police officer.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

      25.     In response to Paragraph 25 of Plaintiffs' complaint, Defendants make the following statements:

      a.     While Officer Harmon is ordering Jonathan to get back for a fourth time, Officer Anthony Johnson approached Jonathan, placed his open left hand on Jonathan's left upper chest, pushed Jonathan away from Officer Harmon, and issued his own loud, clear, and verbal command for Jonathan to back up;

      b.     When he pushed Jonathan, Officer Johnson was carrying a Division-issued shotgun in his right hand but had not been brandishing it;

      c.     In response to Officer Johnson's push, Jonathan used his own right arm to swat away Officer Johnson's left arm and then square up to Officer Johnson in a threatening manner;

      d.     Officer Johnson switched the shotgun from his right hand to his left hand and then stepped toward Jonathan;

      e.     Jonathan then widened his feet and assumed a boxer's stance by placing his right leg behind his left and by beginning to raise his arms;

      f.     In response to Jonathan's continued aggression and failure to comply with several lawful order, Officer Johnson delivered a single Level-4 strike (i.e., a punch or slap) to the left side of Jonathan's face;

      g.     Jonathan was knocked backward but did not fall to the ground;

      h.     After being punched by Officer Johnson, Jonathan was taken to the ground by Officer Harmon;

      i.     Once on the ground, Jonathan was secured in handcuffs by Officer Harmon and Officer Mottinger;

      j.     Officer Johnson did not take Jonathan to the ground, and he did not secure Jonathan in handcuffs;

      k.     It was at this point that Jonathan was arrested, seized, or otherwise taken into custody;

      l.     Officer Johnson and Officer Colin Jones ultimately transported Jonathan to the Franklin County Jail, and he was imprisoned there for a time; and

      m.     None of the conduct described in Paragraph 25 of Plaintiffs' complaint was wrongful.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

      26.     In response to Paragraph 26 of Plaintiffs' complaint, Defendants make the following statements:

a.    Derrick had been recording the incident with the camera on his mobile phone;

b.    After Jonathan was punched by Officer Johnson and while Officer Harmon and Mottinger were attempting to take Jonathan into custody, Derrick sprang from the front porch of the residence at 773 Stanley Avenue and rand toward the arresting officers;

c.    Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding the Derrick's state of mind, mental impressions, thought process, or motivations, Defendants deny such allegations;

d.    Officer Barsotti placed his right hand on Derrick's left upper chest, pushed Derrick back only slightly and told Derrick to back up;

e.    Looking directly at Officer Barsotti, Derrick forcefully pushed back against Officer Barsotti;

f.    Officer Barsotti repeated his commands for Derrick to back up and tried to either push or grab him with both hands, but Derrick—still looking directly at Officer Barsotti—forcefully swatted Officer Barsotti's hands away and continued running toward the officers who were arresting Jonathan;

g.    Derrick ran toward Officer Harmon and Officer Mottinger, who were attempting to take Jonathan into custody;

h.    Derrick got so close to Officer Mottinger that Officer Mottinger was forced to push Derrick away with both hands and while he was still on his knees;

i.    At about the same time that Officer Mottinger attempted to push Derrick away from Jonathan's arrest, Officer Johnson deployed chemical spray directly to Derrick's face;

j.    Officer Johnson swatted the mobile phone out of Derrick's hand, grabbed him by the right arm, and took him to the ground;

k.     Once Derrick was on the ground, Officer Woodyard, who was just arriving on the scene, takes over and places Derrick in handcuffs;

l.     Once Derrick was handcuffed, Officer Woodyard and Officer Barsotti helped Derrick up and escorted him to a prisoner transport vehicle;

m.     Neither Officer Harmon nor Officer Barsotti took Derrick to the ground;

n.     It was, however, at this point that Derrick was arrested, seized, or otherwise taken into custody;

o.     Officer Ridley and Officer Woodyard ultimately transported Derrick to the Franklin County Jail, and he was imprisoned there for a time; and

p.     None of the conduct described in Paragraph 26 of Plaintiffs' complaint was wrongful.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

27.     In response to Paragraph 27 of Plaintiffs' complaint, Defendants make the following statements:

a.     The Columbus City Attorney's Office rightly charged Jonathan with obstructing official business, which is a violation of Columbus City Code § 2321.31 and a second-degree misdemeanor;

b.     The Columbus City Attorney's Office rightly charged Jonathan with disorderly conduct, which is a violation of Columbus City Code § 2317.11 and a fourth-degree misdemeanor;

      c.     The Columbus City Attorney's Office had sufficient probable cause to charge Jonathan obstructing official business and disorderly conduct, among other things, as a result of his conduct on June 7, 2019; and

      d.     Nevertheless, upon motion of the Columbus City Attorney's Office, the charges against Jonathan were dismissed in the interests of justice and for time served.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

28.    In response to Paragraph 28 of Plaintiffs' complaint, Defendants make the following statements:

      a.     The Columbus City Attorney's Office rightly charged Derrick with obstructing official business, which is a violation of Columbus City Code § 2321.31 and a second-degree misdemeanor;

      b.     The Columbus City Attorney's Office had sufficient probable cause to charge Derrick with obstructing official business, among other things, as a result of his conduct on June 7, 2019; and

      c.     Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding the advice that Derrick received from his attorney, Defendants deny such allegations;

      d.     Because Defendants are without knowledge, information, or believe sufficient to admit or deny allegations regarding the Derrick's state of mind, mental impressions, thought process, or motivations, Defendants deny such allegations;

      e.      Defendants deny that the facts alleged in Paragraph 28 of Plaintiffs' complaint constitute sufficient coercion;

      f.      Derrick initially pled guilty to the charge discussed above;

      g.      Derrick later moved to withdraw his guilty plea, and his motion was not opposed by the Columbus City Attorney's Office;

      h.      Derrick's guilty plea was then withdrawn and the charge against him was dismissed at the request of the Columbus City Attorney's Office in the interests of justice and for time served.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

29.      Defendants admit the allegations in Paragraph 29 of Plaintiffs' complaint.

30.      In response to Paragraph 30 of Plaintiffs' complaint, Defendants make the following statements:

      a.      The Introduction & Summary section of the Matrix Report states that it "documents the results of the Operations Review of the Columbus Division of Police" and "summarizes months of effort by the consulting team, employees of the Division of Police, City staff and the community working together since the Winter of 2018-19;"

      b.      In a section on Patrol Training, the Matrix Report states, "[t]hough an initial 30 hours of Procedural Justice, Bias and Ethics is small considering there is total of 1,177 hours of instruction, these topics are also re-enforced throughout other training and are also covered in some annual trainings"; and

       c.     Nothing in the Matrix Report states or suggests that the Procedural Justice, Bias, and Ethics training is inadequate.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

31.     Defendants deny the allegations in Paragraph 31 of Plaintiffs' complaint.

32.     Defendants deny the allegations in Paragraph 32 of Plaintiffs' complaint.

33.     In response to Paragraph 33 of Plaintiffs' complaint, Defendants restate each and every admission, denial, and averment contained with the preceding paragraphs of this answer.

34.     In response to Paragraph 34 of Plaintiffs' complaint, Defendants admit that Plaintiffs have accurately quoted 42 U.S.C. § 1983, in part, but deny that Plaintiffs have quoted 42 U.S.C. § 1983 in toto. Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

35.     Defendants admit the allegations in Paragraph 35 of Plaintiffs' complaint.

36.     Defendants admit the allegations in Paragraph 36 of Plaintiffs' complaint.

37.     Defendants deny the allegations in Paragraph 37 of Plaintiffs' complaint and as inaccurate and incomplete statement of the law concerning warrantless searches of a residence.

38.     Defendants deny the allegations in Paragraph 38 of Plaintiffs' complaint and as inaccurate and incomplete statement of the law concerning warrantless searches of a residence.

39.     In response to Paragraph 39 of Plaintiffs' complaint, Defendants make the following statements:

      a.      The police officers who searched the residence at 773 Stanley Avenue on June 7, 2019, were acting under color of state law at the time;

      b.      Officer Snyder, who retrieved the BB gun from 773 Stanley Avenue on June 7, 2019, was acting under color of state law.

      c.      No CPD officer violated Derryle's rights under either the Fourth or Fourteenth Amendments on June 7, 2019; and

      d.      No CPD officer is liable to Derryle under 42 U.S.C. § 1983.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

40.      In response to Paragraph 40 of Plaintiffs' complaint, Defendants make the following statements:

      a.      The police officers who searched the residence at 773 Stanley Avenue on June 7, 2019, were acting within the course and scope of their City employment and pursuant to their City training;

      b.      Officer Snyder, who retrieved the BB gun from 773 Stanley Avenue on June 7, 2019, was acting within the course and scope of his City employment and pursuant to his City training; and

      c.      The City's training is not inadequate.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

41.      Defendants deny the allegations in Paragraph 41 of Plaintiffs' complaint.

42.     Defendants deny the allegations in Paragraph 42 of Plaintiffs' complaint.

43.     In response to Paragraph 43 of Plaintiffs' complaint, Defendants restate each and every admission, denial, and averment contained with the preceding paragraphs of this answer.

44.     In response to Paragraph 44 of Plaintiffs' complaint, Defendants admit that Plaintiffs have accurately quoted Columbus City Code § 2321.31(a), which defines the offense of obstructing official business but deny that Plaintiffs have quoted Columbus City Code § 2321.31 in toto. Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

45.     Defendants admit the allegations of Paragraph 45 of Plaintiffs' complaint.

46.     Defendants deny the allegations of Paragraph 46 of Plaintiffs' complaint.

47.     In response to Paragraph 47 of Plaintiffs' complaint, Defendants make the following statements:

a.     The police officers who arrested Jonathan on June 7, 2019, were acting under color of state law at the time;

b.     No CPD officer wrongfully arrested or imprisoned Jonathan on June 7, 2019;

c.     No CPD officer violated Jonathan's rights under either the Fourth or Fourteenth Amendments on June 7, 2019; and

d.     No CPD officer is liable to Jonathan under 42 U.S.C. § 1983.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

48.     In response to Paragraph 48 of Plaintiffs' complaint, Defendants make the following statements:

      a.     The police officers who arrested Jonathan on June 7, 2019, were acting within the course and scope of their City employment and pursuant to their City training; and

      b.     The City's training is not inadequate.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

49.     Defendants deny the allegations in Paragraph 49 of Plaintiffs complaint.

50.     Defendants deny the allegations in Paragraph 50 of Plaintiffs complaint.

51.     Defendants deny the allegations in Paragraph 51 of Plaintiffs complaint.

52.     In response to Paragraph 52 of Plaintiffs' complaint, Defendants restate each and every admission, denial, and averment contained with the preceding paragraphs of this answer.

53.     Defendants admit the allegations in Paragraph 53 of Plaintiffs' complaint.

54.     Defendants admit the allegations in Paragraph 54 of Plaintiffs' complaint.

55.     Defendants deny the allegations in Paragraph 55 of Plaintiffs' complaint.

56.     Defendants deny the allegations in Paragraph 56 of Plaintiffs' complaint.

57.     Defendants deny the allegations in Paragraph 57 of Plaintiffs' complaint.

58.     Defendants deny the allegations in Paragraph 58 of Plaintiffs' complaint.

59.     In response to Paragraph 59 of Plaintiffs' complaint, Defendants make the following statements:

      a.     The police officers who arrested Derrick on June 7, 2019, were acting under color of state law at the time;

b.  No CPD officer wrongfully arrested or imprisoned Derrick on June 7, 2019;

c.  No CPD officer violated Derrick's rights under either the First or the Fourth Amendments on June 7, 2019; and

d.  No CPD officer is liable to Derrick under 42 U.S.C. § 1983.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

60.  In response to Paragraph 60 of Plaintiffs' complaint, Defendants make the following statements:

a.  The police officers who arrested Derrick on June 7, 2019, were acting within the course and scope of their City employment and pursuant to their City training; and

b.  The City's training is not inadequate.

Answering further, Defendants deny each and every allegation in this particular paragraph of Plaintiffs' complaint that is either inconsistent with or is not specifically admitted by any of the foregoing statements in this particular paragraph of Defendants' answer.

61.  Defendants deny the allegations in Paragraph 61 of Plaintiffs' complaint.

62.  Defendants deny the allegations in Paragraph 62 of Plaintiffs' complaint.

63.  Defendants deny the allegations in Paragraph 63 of Plaintiffs' complaint.

64.  In response to Paragraph 64 of Plaintiffs' complaint, Defendants restate each and every admission, denial, and averment contained with the preceding paragraphs of this answer.

65.  Defendants deny the allegations in Paragraph 65 of Plaintiffs' complaint.

66.  Defendants deny the allegations in Paragraph 66 of Plaintiffs' complaint.

67.  Defendants deny the allegations in Paragraph 67 of Plaintiffs' complaint.

68.    Defendants deny the allegations in Paragraph 68 of Plaintiffs' complaint.

69.    Defendants deny the allegations in Paragraph 69 of Plaintiffs' complaint.

70.    Defendants deny the allegations in Paragraph 70 of Plaintiffs' complaint.

71.    In response to Paragraph 71 of Plaintiffs' complaint, Defendants restate each and every admission, denial, and averment contained with the preceding paragraphs of this answer.

72.    Defendants deny the allegations in Paragraph 72 of Plaintiffs' complaint.

73.    Defendants deny the allegations in Paragraph 73 of Plaintiffs' complaint.

74.    Defendants deny the allegations in Paragraph 74 of Plaintiffs' complaint.

75.    Defendants deny the allegations in Paragraph 75 of Plaintiffs' complaint.

76.    Defendants deny the allegations in Paragraph 76 of Plaintiffs' complaint.

77.    Defendants deny the allegations in Paragraph 77 of Plaintiffs' complaint.

78.    Defendants deny the allegations in Paragraph 78 of Plaintiffs' complaint.

79.    Defendants deny the allegations in Paragraph 79 of Plaintiffs' complaint.

80.    Defendants deny the allegations in Paragraph 80 of Plaintiffs' complaint.

81.    Defendants deny the allegations in Paragraph 81 of Plaintiffs' complaint.

### GENERAL ADMISSIONS, DENIALS & ASSERTIONS

82.    Defendants deny each and every allegation made in Plaintiffs' complaint that has not been specifically and unequivocally admitted in any of the foregoing paragraphs of this answer.

### AFFIRMATIVE DEFENSES

83.    With respect to Plaintiffs' purported federal claims, the individual defendants are entitled to qualified immunity.

84.    With respect to Plaintiffs' purported state law claims, Defendants are entitled to all applicable immunities, defenses, set-offs, and limitations set forth in Ohio's Political Subdivision Tort Liability Act, O.R.C §§ 2744.01–2744.11.

85. Plaintiffs' claims are barred (either in whole or in part) by their own comparative fault, contributory negligence, assumption of the risk, and/or wrongful conduct.

86. Plaintiffs' claims are barred (either in whole or in part) by a failure to mitigate or to reasonably minimize their own purported damages.

87. Plaintiffs' claims are barred (in whole or in part) by the doctrines of estoppel, waiver, or laches.

88. Plaintiffs' fails to state any claim against Defendants upon which any relief could be granted.

89. Defendants reserve the right to assert such additional defenses that may become apparent as this civil action proceeds through discovery.

## PRAYER FOR RELIEF

90. Having fully answered Plaintiffs' complaint, Defendants respectfully request: (a) an order from this Court dismissing Plaintiffs' claims against them with prejudice; (b) an order from this Court assessing costs (including reasonable attorneys' fees incurred in defending the claims asserted herein) to Defendants; (c) an order from this Court awarding Defendants any and all such other relief the Court deems just, necessary, or appropriate; and (d) and a final judgment entry terminating this case in Defendants' favor.

Respectfully submitted,

/s/ Andrew D.M. Miller
Westley M. Phillips (0077728)
Andrew D.M. Miller (0074515)
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov
andrewdmmiller@columbus.gov

Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that, on **April 11, 2020**, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Andrew D.M. Miller
Andrew D.M. Miller (0074515)
admmiller@columbus.gov